# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 20-885V
Filed: July 21, 2023

---

GESDIA KELLY,

                Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                Respondent.

---

*Gesdia Kelly*, Linthicum Heights, MD, pro se petitioner.
*Dorian Hurley*, U.S. Department of Justice, Washington, DC, for respondent.

## **DECISION**[1]

On July 21, 2020, petitioner filed a claim under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa, *et seq.* (2012), alleging that she suffered severe pain, including but not limited to severe bilateral shoulder pain and chest pain, following receipt of her July 21, 2017, and August 24, 2017, measles, mumps, and rubella ("MMR") vaccinations.  (ECF No. 1.)  For the reasons discussed below, I now find that petitioner is *not* entitled to compensation and her petition is dismissed.

### I.  Procedural History

At the time the petition was initially filed petitioner was represented by counsel. On petitioner's behalf, her counsel filed affidavits and medical records marked as

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

Exhibits 1-19.  Petitioner filed a Statement of Completion on April 22, 2022.  (ECF No. 23.)  On July 14, 2021, respondent filed his Rule 4 Report.  (ECF No. 26.)  Respondent recommended that the case be dismissed, contending, *inter alia*, that petitioner had not demonstrated a cognizable injury or proven causation-in-fact.  (*Id.* at 12-14.)

Thereafter, petitioner was provided an opportunity to file an amended petition clarifying the injury at issue as well as additional medical records and an expert report to support her claim.  (ECF No. 27.)  Petitioner filed additional medical records and other documents marked as Exhibits 20-24 and an amended Statement of Completion; however, petitioner's counsel filed a motion to withdraw from the case on December 28, 2022, without having been able to secure an expert opinion and without amending the petition.  (ECF No. 45.)  I granted the motion on March 16, 2023.  (ECF No. 56.)  From the time petitioner was first ordered to file an expert report until counsel filed her motion to withdraw, petitioner had over a year within which to investigate through counsel whether an expert report and amended petition could be filed.[2]

After the withdrawal of petitioner's former counsel, I issued an Order to Show Cause directing petitioner to file an expert report supporting her claim by no later than June 20, 2023.  (ECF No. 57, p. 4.)  I noted that petitioner had already been given a full and fair opportunity to secure an expert report and informed her that, based on my review of the record, "petitioner must file an expert medical opinion to have any possibility of prevailing."  (*Id.*)  However, in light of her former counsel's withdrawal, I allowed petitioner an additional 90 days to obtain and file an expert report.  (*Id.*)  I further explained that petitioner, as a *pro se* petitioner, was solely responsible for meeting all deadlines and filing obligations.  (*Id.* at 4-5.)  I provided instructions for seeking additional time and warned petitioner that failure to respond to the Order to Show Cause would result in involuntary dismissal of petitioner's claim.  (*Id.* at 1, 4.)

Petitioner subsequently allowed her June 20, 2023, show cause deadline to lapse without completing any filing.  On June 21, 2023, I issued a further order putting petitioner on notice of my intent to issue a decision dismissing this case on today's date if she did not take action.  (ECF No. 61.)  This order gave petitioner a further 30 days to act in order to prevent issuance of the instant decision.  Petitioner again failed to complete any filing.

In total, petitioner was allowed over two and a half years within which to seek an expert opinion to support her claim, including seven months from the time her counsel first advised she would be moving to withdraw and four months from the undersigned's issuance of the order to show cause why this case should not be dismissed.  Petitioner was provided multiple notices that her claim was at risk of dismissal.  However, petitioner has had no contact with the court subsequent to her counsel's withdrawal.

---

[2] At one point petitioner's counsel filed a motion for extension of time indicating that she had lost contact with petitioner and was concerned the loss of contact might be medically related.  (ECF No. 43.)  However, in the subsequently filed motion to withdraw as counsel, petitioner's counsel confirmed the resumption of contact, though suggesting that contact had been limited to a "few occasions."  (ECF No. 45-2, p. 2.)

## II.       Factual History

The following is a very brief summary of petitioner's post-vaccination medical history. Although this summary reflects only a broad overview of that history, I have reviewed all of the medical records and other documents in evidence and have considered the record as a whole in reaching my conclusion.

Prior to the vaccinations at issue, petitioner had a history of presenting to the emergency department ("ED") for various conditions, including short-lived, non-radiating substernal chest pain. (*See, e.g.*, Ex. 4, pp. 544-45, 693-94, 759-61, 823-27.) However, her work ups were negative for any acute cardiac condition. (Ex. 8, pp. 10-11 (ED encounter 8/7/15); Ex. 4, pp. 825-27 (ED encounter 8/29/16), 760 (ED encounter 9/9/16), 695-96 (ED encounter 10/14/16), 546-47 (ED encounter 4/7/17); Ex. 13, pp. 11-12 (cardiology consultation 8/30/16), 7 (cardiology consultation 10/5/16).)

On July 21, 2017, and August 24, 2017, petitioner received MMR vaccinations in her left upper arm. (Ex. 3, pp. 2-5.) On August 28, 2017, petitioner presented to the Abrazo Arrowhead ER with a chief complaint of "chest pain starting Friday [August 25, 2017] after receiving MMR vaccine on Thursday [August 24, 2017]." (Ex. 4, p. 401.) Petitioner was diagnosed with "[a]cute chest wall pain" and discharged in stable condition with instructions to follow up with a primary care provider. (*Id.* at 404, 417-24.) The discharge instructions explained that "[c]hest wall pain is pain in or around the bones and muscles of your chest. Sometimes, an injury causes this pain. Sometimes, the cause may not be known." (*Id.* at 422.)

Eight days later, on September 5, 2017, petitioner was seen by Physician Assistant James Marczak at Bennett Family Medical Center to establish care as a new patient. (Ex. 20, p. 73.) PA Marczak assessed petitioner as having chest pain and "[o]ther complications following immunization." (*Id.* at 76.) He noted "MMR post-marketing has been [*sic*] reports of neuritis," prescribed petitioner Neurontin, and instructed her to return in seven to ten days if her symptoms were not resolved. (*Id.*) However, this record included no mention of the upper extremity pain, weakness, numbness or tingling that petitioner would later report. For example, petitioner first reported numbness and tingling going up her left arm on October 3, 2017. (Ex. 24, p. 54.)

Bennet Family Medical Center continued treating petitioner symptomatically for a presumed vaccine reaction without ever identifying a specific injury or etiology. However, petitioner also sought care from other providers, including Honor Health Deer Valley Medical Center Emergency Department; Abrazo Scottsdale Emergency Department; cardiologist David Lin, M.D.; ATI Physical Therapy; neurologist Ahmed El-Gengaihy, M.D.; neurologist Leo Kahn, M.D.; and Pain Center of Arizona – Deer Valley. These providers pursued extensive evaluation of petitioner's alleged symptoms.

As of September 26, 2017, petitioner's cardiologist, Dr. Lin, found petitioner "to be stable from a cardiovascular standpoint" and indicated that her "chest pains sound very atypical for a cardiac etiology." (Ex. 14, p. 6.)  Dr. Lin indicated that her "exam suggests that there is a musculoskeletal etiology" for her condition and that he was not aware of the MMR vaccine being able to produce petitioner's symptoms. (*Id.*)

Petitioner underwent an EMG/NCS study on January 8, 2018. (Ex. 18, p. 8-9.) The study was normal, with no electro-physical evidence indicative of a cervical radiculopathy, carpal tunnel syndrome, neuropathy, or myopathy. (*Id.* at 9.) As of February 16, 2018, petitioner's neurologist, Dr. Kahn, concluded that there was "no neurological basis for [petitioner's] reports of intermittent bilateral upper extremity paralysis" and that he did "not identify any neurological relationship between the MMR vaccine and [petitioner's] clinical symptomatology." (Ex. 24, p. 95.)

Eventually, petitioner's treaters at Bennet Family Medical Center began to question whether her reported symptoms were psychosomatic. (Ex. 20, p. 72.) Based on the medical records filed, the etiology for petitioner's symptoms was never resolved and petitioner never carried any clear diagnosis for the symptoms she attributed to her vaccination.

### III.     Legal Standard

To receive compensation in the Vaccine Program, petitioner must prove either (1) that she suffered a "Table Injury" – *i.e.*, an injury falling within the Vaccine Injury Table – corresponding to a covered vaccine, or (2) that she suffered an injury that was actually caused by a covered vaccine.  *See* 42 U.S.C. § 300aa–13(a)(1)(A); 42 U.S.C. § 300aa–11(c)(1).  To satisfy her burden of proving causation in fact, petitioner must show by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury."  *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005).

Petitioner "must specify [her] vaccine-related injury and shoulder the burden of proof on causation."  *Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1346 (Fed. Cir. 2010).  "Although the Vaccine Act does not require absolute precision, it does require the petitioner to establish an injury – the Act specifically creates a claim for compensation for 'vaccine-related injury or death.'"  *Stillwell v. Sec'y of Health & Human Servs.*, 118 Fed. Cl. 47, 56 (2014) (emphasis omitted) (quoting 42 U.S.C. § 300aa-11(c)).  And, in any event, a petitioner must prove by a preponderance of the evidence the factual circumstances surrounding her claim.  *See* 42 U.S.C. § 300aa–13(a)(1)(A).  "[T]he function of a special master is not to 'diagnose' vaccine-related injuries, but instead to determine 'based on the record evidence as a whole and the totality of the case, whether it has been shown by a preponderance of the evidence that a vaccine caused the [petitioner]'s injury.'"  *Andreu ex rel. Andreu v. Sec'y of Health & Human*

4

*Servs.*, 569 F.3d 1367, 1382 (Fed. Cir. 2009) (quoting *Knudsen ex rel. Knudsen v. Sec'y of Health & Human Servs.*, 35 F.3d 543, 549 (Fed. Cir. 1994)).

Special masters are charged with adjudicating cases in this program while "endeavoring to make the proceedings expeditious, flexible, and less adversarial, while at the same time affording each party a full and fair opportunity to present its case and creating a record sufficient to allow review of the special master's decision." Vaccine Rule 3(b)(2). However, the Vaccine Act prohibits the undersigned from ruling for petitioner based solely on her allegations unsubstantiated by medical records or medical opinion. *See* 42 U.S.C. § 300aa–13(a)(1). Vaccine Rule 21(b)(1) provides that "[t]he special master or the court may dismiss a petition or any claim therein for failure of the petitioner to prosecute or comply with these rules or any order of the special master or the court."

## IV.   Discussion

Respondent is persuasive in contending that petitioner has not presented a cognizable injury. In order to present an "injury" cognizable under the Vaccine Act, "[m]edical recognition of the injury claimed is critical" and petitioner must assert "more than just a symptom or manifestation of an unknown injury." *Broekelschen*, 618 F.3d at 1349. Here, petitioner pleads only symptoms she relates to an unidentified injury purported to be vaccine-caused, claiming that the nature of her condition is set forth in her medical records. (ECF No. 1, p. 2.) However, as indicated above, petitioner's medical records show that her treating physicians failed to reach a diagnosis or determine the etiology for her symptoms. Nor did petitioner provide any expert report to otherwise elucidate the nature of her alleged vaccine-related condition.

Even assuming *arguendo* that any of petitioner's reported symptoms did constitute a cognizable injury in and of themselves, a review of the complete medical records confirms that they do not support her assertion of vaccine-causation by a preponderance of the evidence. Although petitioner's primary care provider noted a phenomenon of post-vaccinal neuritis and initially suspected a vaccine reaction without identifying the etiology, this was not borne out by subsequent specialist evaluation and opinion. Additionally, that primary care practice eventually questioned whether petitioner's symptoms were instead psychosomatic. And, again, petitioner did not file a medical opinion from an expert in support of her allegations.

On the existing record, petitioner has failed to come forward with evidence sufficient to meet her *prima facie* burden of proof. Moreover, I have concluded that the parties have had a full and fair opportunity to develop the record and that it is appropriate to resolve this case based on the existing record. *See Kreizenbeck v. Sec'y of Health & Human Servs.*, 945 F.3d 1362, 1366 (Fed. Cir. 2020) (citing *Simanski v. Sec'y of Health & Human Servs.*, 671 F.3d 1368, 1385 (Fed. Cir. 2012)); *Jay v. Sec'y of Health & Human Servs.*, 998 F.2d 979, 983 (Fed. Cir. 1993)); *see also* Vaccine Rule 8(d); Vaccine Rule 3(b)(2). Petitioner was advised of the importance of providing an expert medical opinion to support her allegations and did not submit one despite being

provided that opportunity. She did not ever suggest she was attempting to secure an expert opinion and did not at any point request additional time to do so. Dismissal is therefore appropriate on the merits.

Furthermore, even after departure of her counsel, petitioner was provided ample time to respond to the undersigned's orders requiring submission of an expert report. Petitioner was specifically instructed regarding the necessity of following court orders and how to request additional time if needed. (ECF No. 57.) Accordingly, petitioner's total inaction over a period of four months subsequent to counsel's withdrawal, including her failure to either produce the required expert report or otherwise respond to the court's orders, constitutes a separate and additional basis for dismissal for failure to prosecute. *See* Vaccine Rule 21(b)(1).

### V.     Conclusion

This case is now **DISMISSED**. The clerk of the court is directed to enter judgment in accordance with this decision.[3]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.