# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-885V

|  |  |
|---|---|
| GESDIA KELLY,<br><br>                 Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                 Respondent. | Filed: September 22, 2023<br><br>Reissued for Public Availability:<br>October 18, 2023 |

*Gesdia Kelly*, Linthicum Heights, MD, pro se petitioner.
*Michael Andrew London*, Douglas & London, P.C., New York, NY, former counsel for petitioner.
*Dorian Hurley*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION DENYING ATTORNEYS' FEES AND COSTS[1]

On July 21, 2020, petitioner filed a claim under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa, *et seq.* (2012), alleging that she suffered severe pain, including but not limited to severe bilateral shoulder pain and chest pain, following receipt of her July 21, 2017, and August 24, 2017, measles, mumps, and rubella ("MMR") vaccinations. (ECF No. 1.) The case was dismissed on July 21, 2023. (ECF No. 62.) Prior to withdrawing, petitioner's former counsel[2] moved for an award of attorneys' fees and costs. (ECF No. 46.) I deferred ruling on the motion until judgement entered in the case. (ECF No. 55.) For the reasons discussed below, I now conclude that there was *not* a reasonable basis for the filing of this petition and petitioner's request for attorneys' fees and costs is denied.

### I.   Procedural History

---

[1] Pursuant to Vaccine Rule 18(b), this Decision was initially filed on September 22, 2023, and the parties were afforded 14 days to propose redactions. The parties did not propose any redactions. Accordingly, this Decision is reissued in its original form for posting on the court's website.

[2] Although Mr. London is docketed as counsel of record, this case was largely handled by his associate, Virginia E. Anello. All references to petitioner's counsel in the decision refer to Ms. Anello.

1

At the time the petition was initially filed, petitioner was represented by counsel. Apart from describing symptoms of bilateral shoulder and chest pain, the petition was no more precise than to state that petitioner was asserting unspecified "Non-Table" Injuries. (ECF No. 1, p. 1.)  Although the petition does not include a specific allegation with respect to injury onset, based on the date of vaccination, the petition was likely filed very shortly before the expiration of the statute of limitations for any claim stemming from the alleged vaccinations. On petitioner's behalf, her counsel filed affidavits and medical records marked as Exhibits 1-18 within about two months of filing her petition. Exhibit 19 was filed, along with a Statement of Completion, on April 22, 2022. (ECF Nos. 22-23.)  On July 14, 2021, respondent filed his Rule 4 Report. (ECF No. 26.) Respondent recommended that the case be dismissed, contending, *inter alia*, that petitioner had not demonstrated a cognizable injury or proven causation-in-fact. (*Id.* at 12-14.)

Thereafter, petitioner was provided an opportunity to file an amended petition, clarifying the injury at issue, as well as additional medical records and an expert report to support her claim. (ECF No. 27.)  Petitioner filed additional medical records and other documents marked as Exhibits 20-24 and an amended Statement of Completion; however, petitioner's counsel filed a motion to withdraw from the case on December 28, 2022, without having been able to secure an expert opinion and without amending the petition. (ECF No. 45.)  I granted the motion on March 16, 2023. (ECF No. 56.)  At the same time, I issued an Order to Show Cause instructing petitioner to file an expert report supporting the claim in order to avoid dismissal. (ECF No. 57.)

In connection with her departure from the case, petitioner's prior counsel filed a motion seeking attorneys' fees and costs on January 6, 2023. (ECF No. 46.) Petitioner's counsel requested $27,344.68, representing $23,423.00 in attorneys' fees and $3,921.68 in attorneys' costs. (ECF No. 46-1.)  Respondent filed his response to the motion on January 20, 2023. (ECF No. 48.)  Respondent argued that petitioner had not demonstrated an interim award of attorneys' fees and costs to be appropriate and that the petition lacked a reasonable basis. (*Id.*)  On February 16, 2023, petitioner filed a reply to respondent's response accompanied by medical literature marked as Exhibits 25-32. (ECF Nos. 51-52.)  Because new evidence was filed with the reply, I allowed respondent to file a sur-reply, which was filed on March 3, 2023. (ECF No. 54.)

After the parties completed their briefing, I determined that I would defer ruling on the motion for attorneys' fees and costs until petitioner responded to the pending Order to Show Cause or judgment entered in the case. (ECF No. 55.)  Petitioner did not respond to the Order to Show Cause, and the case was dismissed on July 21, 2023. (ECF No. 62.)  The judgment dismissing this case issued on August 25, 2023. (ECF No. 64.)

The case was dismissed both for failure to provide preponderant evidence supporting petitioner's *prima facie* burden of proof and for failure to prosecute. (*Id.*) With regard to the merits, petitioner failed to identify a cognizable injury and also failed

2

to present preponderant evidence that her symptoms were vaccine-caused. (ECF No. 62.)

## II.     Factual History[3]

The following is a very brief summary of petitioner's post-vaccination medical history. Although this summary reflects only a broad overview of that history, I have reviewed all of the medical records and other documents in evidence and have considered the record as a whole in reaching my conclusion.

Prior to the vaccinations at issue, petitioner had a history of presenting to the emergency department ("ED") for various conditions, including short-lived, non-radiating substernal chest pain. (*See, e.g.*, Ex. 4, pp. 544-45, 693-94, 759-61, 823-27.) However, her work ups were negative for any acute cardiac condition. (Ex. 8, pp. 10-11 (ED encounter 8/7/15); Ex. 4, pp. 825-27 (ED encounter 8/29/16), 760 (ED encounter 9/9/16), 695-96 (ED encounter 10/14/16), 546-47 (ED encounter 4/7/17); Ex. 13, pp. 11-12 (cardiology consultation 8/30/16), 7 (cardiology consultation 10/5/16).)

On July 21, 2017, and August 24, 2017, petitioner received MMR vaccinations in her left upper arm. (Ex. 3, pp. 2-5.) On August 28, 2017, petitioner presented to the Abrazo Arrowhead ER with a chief complaint of "chest pain starting Friday [August 25, 2017] after receiving MMR vaccine on Thursday [August 24, 2017]." (Ex. 4, p. 401.) Petitioner was diagnosed with "[a]cute chest wall pain" and discharged in stable condition with instructions to follow up with a primary care provider. (*Id*. at 404, 417-24.) The discharge instructions explained that "[c]hest wall pain is pain in or around the bones and muscles of your chest. Sometimes, an injury causes this pain. Sometimes, the cause may not be known." (*Id*. at 422.)

Eight days later, on September 5, 2017, petitioner was seen by Physician Assistant James Marczak at Bennett Family Medical Center to establish care as a new patient. (Ex. 20, p. 73.) PA Marczak assessed petitioner as having chest pain and "[o]ther complications following immunization." (*Id*. at 76.) He noted "MMR post-marketing has been [*sic*] reports of neuritis," prescribed petitioner Neurontin, and instructed her to return in seven to ten days if her symptoms were not resolved. (*Id*.) However, this record included no mention of the upper extremity pain, weakness, numbness, or tingling that petitioner would later report. For example, petitioner first reported numbness and tingling going up her left arm on October 3, 2017. (Ex. 24, p. 54.)

Bennett Family Medical Center continued treating petitioner symptomatically for a presumed vaccine reaction without ever identifying a specific injury or etiology. However, petitioner also sought care from other providers, including Honor Health Deer Valley Medical Center Emergency Department; Abrazo Scottsdale Emergency Department; cardiologist David Lin, M.D.; ATI Physical Therapy; neurologist Ahmed El-

---

[3] This history is copied from the dismissal decision.

3

Gengaihy, M.D.; neurologist Leo Kahn, M.D.; and Pain Center of Arizona – Deer Valley. These providers pursued extensive evaluation of petitioner's alleged symptoms.

As of September 26, 2017, petitioner's cardiologist, Dr. Lin, found petitioner "to be stable from a cardiovascular standpoint" and indicated that her "chest pains sound very atypical for a cardiac etiology." (Ex. 14, p. 6.) Dr. Lin indicated that her "exam suggests that there is a musculoskeletal etiology" for her condition and that he was not aware of the MMR vaccine being able to produce petitioner's symptoms. (*Id.*)

Petitioner underwent an EMG/NCS study on January 8, 2018. (Ex. 18, p. 8-9.) The study was normal, with no electro-physical evidence indicative of a cervical radiculopathy, carpal tunnel syndrome, neuropathy, or myopathy. (*Id.* at 9.) As of February 16, 2018, petitioner's neurologist, Dr. Kahn, concluded that there was "no neurological basis for [petitioner's] reports of intermittent bilateral upper extremity paralysis" and that he did "not identify any neurological relationship between the MMR vaccine and [petitioner's] clinical symptomatology." (Ex. 24, p. 95.)

Eventually, petitioner's treaters at Bennett Family Medical Center began to question whether her reported symptoms were psychosomatic. (Ex. 20, p. 72.) Based on the medical records filed, the etiology for petitioner's symptoms was never resolved and petitioner never carried any clear diagnosis for the symptoms she attributed to her vaccination.

### III.     Legal Standard

Petitioners who are denied compensation for their claims brought under the Vaccine Act may still be awarded attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1); *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1360-61 (Fed. Cir. 2012). But even when a claim was brought in good faith and has a reasonable basis, a special master may still deny attorneys' fees. *See* 42 U.S.C. § 300aa-15(e)(1); *Cloer*, 675 F.3d at 1365.

"Good faith" and "reasonable basis" are two distinct requirements under the Vaccine Act. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017). Good faith is a subjective inquiry while reasonable basis is an objective inquiry that does not factor subjective views into consideration. *See James-Cornelius v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021). In this case, petitioner's good faith is not challenged, leaving only the question of whether there was a reasonable basis for the filing of the petition.

Determining whether there was a reasonable basis involves examining the *prima facie* petition requirements of section 300aa-11(c)(1) of the Vaccine Act. *Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1345-46 (Fed. Cir. 2020). Specifically,

4

the petition must be accompanied by an affidavit and supporting documentation showing that the vaccinee:

> (1) received a vaccine listed on the Vaccine Injury Table;
> (2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;
> (3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;
> (4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and
> (5) has not previously collected an award or settlement of a civil action for damages for the same injury.

42 U.S.C. §300aa-11(c)(1).

     The evidentiary standard for establishing a reasonable basis as a prerequisite to an award of attorneys' fees and costs is lower than the evidentiary standard for being awarded compensation under the Vaccine Act. To establish a reasonable basis for attorneys' fees, the petitioner need not prove a likelihood of success. *See Woods v. Sec'y of Health & Human Servs.*, No. 10-377V, 2012 WL 4010485, at *6-7 (Fed. Cl. Spec. Mstr. Aug. 23, 2012). Instead, the special master considers the totality of the circumstances and evaluates objective evidence that, while amounting to less than a preponderance of evidence, constitutes "more than a mere scintilla" of evidence. *Cottingham*, 971 F.3d at 1344, 1346; *see also Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 287 (2018). Importantly, counsel's conduct in filing a petition to preserve petitioner's claim prior to expiration of the statute of limitations may be a factor in assessing good faith, but not reasonable basis. *Simmons*, 875 F.3d at 635-36.

     Determining what constitutes "more than a mere scintilla" of evidence has been acknowledged to be a "daunting task." *Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021). The required showing has been characterized as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation." *Id.* (quoting *Penley v. McDowell Cnty, Bd. of Educ.*, 876 F.3d 646, 655 (4th Cir. 2017)). "More than a mere scintilla" of objective evidence supporting causation can derive from medical records that provide "only circumstantial evidence of causation." *James-Cornelius*, 984 F.3d at 1379-80. For example, in *James-Cornelius* the Federal Circuit found significance in (1) petitioner's medical records containing a doctor's note questioning whether a vaccine adverse event should be reported, (2) the medical course suggesting a challenge-rechallenge event of petitioner's symptoms becoming worse after additional injections of the vaccine, (3) medical articles hypothesizing that the vaccine can cause the symptoms at issue, and (4) petitioner having suffered some of the same symptoms that were listed in the vaccine's package

insert as potential adverse reactions of the vaccine.[4]  *Id.*; *see also Cottingham*, 971 F.3d at 1346 (finding that petitioner's medical records showed, at minimum, circumstantial evidence of causation where petitioner's medical records showed that petitioner received the Gardasil vaccine and subsequently experienced symptoms that were identified in the Gardasil package insert as potential adverse reactions of the vaccine).

The Federal Circuit has confirmed that a case can lose its reasonable basis as it proceeds.  *Perreira v. Sec'y of Health & Human Servs.,* 33 F.3d 1375, 1376-77 (Fed. Cir. 1994).  Counsel has a duty to avoid frivolous litigation and should use "reasoned judgment in determining whether to . . . pursue a claim." *Murphy v. Sec'y of Health & Human Servs.,* 30 Fed. Cl. 60, 62 (1993), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995).  "[T]he [Vaccine] Program's interest in promoting representation in vaccine cases, as contemplated by the attorneys' fees provisions of the statute, must be balanced carefully against the court's examination of the reasonableness of the basis for bringing the vaccine petition." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *11 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  Although counsel has an "ethical obligation to be a zealous advocate," that does not give counsel a "blank check to incur expenses without regard to the merits of [the] claim." *Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 29, 34-35 (1992).

## IV.     Party Contentions

Petitioner's initial motion sets forth only the basis for the amount of the requested award.  The motion offers no argument with respect to whether there was a reasonable basis for the filing of the petition.  (ECF No. 46.)  In response, respondent provided an extensive review of petitioner's medical history and argued that (1) petitioner had not demonstrated a cognizable injury and, (2) even addressing petitioner's symptoms, there was not "more than a mere scintilla" of evidence of vaccine causation.  (ECF No. 48.)

Petitioner's reply stresses the distinction between information gathered prior to filing the petition and information collected after filing the petition.  (ECF No. 51.)  In her consultations with counsel, petitioner described her injury as relating to her shoulder and arm and as including numbness and burning sensation.  (*Id.* at 2.)  She indicated "that a healthcare provider [specifically TeAnn Phillippis, PA-C] had related petitioner's injuries to the MMR vaccine she had received." (*Id.*)  Counsel felt petitioner's reported injury could be consistent with either SIRVA, brachial neuritis, or other neuropathy.  (*Id.* at 3.)

---

[4] Nothing in *James Cornelius* suggests the full extent of what may constitute circumstantial evidence, but the four examples of circumstantial evidence in *James-Cornelius* provide some guidance regarding the types of circumstantial evidence that may be considered in determining whether a reasonable basis was established.  Conversely, the Federal Circuit also stressed in *James-Cornelius* that an award of attorneys' fees and costs is within the special master's discretion and remanded the case for further proceedings.  *See* 984 F.3d at 1381.  Accordingly, it is also not the case that the presence of these specific elements of circumstantial evidence necessarily compel a finding that reasonable basis exists.

According to petitioner's reply brief, petitioner's counsel had the following supporting information at the time the petition was filed: documentation of the MMR vaccination (Ex. 3.); medical records from Bennett Family Medical Center, where TeAnn Phillippis worked, that included documentation of a diagnosis of "other complications following immunization, not elsewhere classified" (Ex. 6, pp. 2, 22.)[5]; the record of petitioner's August 28, 2017 emergency department encounter documenting her complaint of post-MMR vaccination chest pain (Ex. 4, pp. 369-457.); Pain Center of Arizona – Deer Valley medical records documenting a complaint of post-vaccination bilateral upper extremity and neuralgic pain (Ex. 5, p. 9.); St. Luke's Behavioral Health records documenting chronic arm and chest pain following vaccination two years prior (Ex. 7, pp. 163, 169, 185.).  (ECF No. 51, pp. 3-4.)

Petitioner's counsel explains:

> Despite having requested additional medical records from facilities prior to the filing of Petitioner's action, these records had not been received as of July 21, 2020, the date Petitioner's action was filed.  Petitioner's Counsel specifically filed the action on that day to preserve any and all of Petitioner's legal rights because that was three years from the date when she had received the first MMR vaccination.

(*Id.* at 4-5.)  Petitioner's counsel acknowledges that the subsequently filed records included neurologist Dr. Kahn's assessment that she did not suffer a neurologic condition and that she ultimately was unable to secure an expert opinion for the case.  (*Id.* at 7-8.)  Petitioner asserts that the evidence that was available at the time the petition was filed constituted "more than a mere scintilla" of evidence and that a reasonable basis for the filing and prosecution of this case existed throughout the time counsel continued collecting medical records and searching for an expert.  (*Id.* at 12-13.)  Petitioner argues that respondent's opposition is "woefully flawed" because "it completely ignores the date on which the very evidence it relies upon was made available to the parties."  (*Id.* at 13.)

Petitioner asserts that her post-vaccination symptoms were potentially consistent with SIRVA, chronic arthritis, or brachial neuritis.  (*Id.* at 9.)  She asserts that all three find support from the Vaccine Injury Table, and she further filed medical articles, which she asserts demonstrate both that vaccines can cause peripheral neuropathies and that peripheral neuropathies can manifest with chest pain.  (*Id.* at 9-10.)

In his sur-reply, respondent maintains his position with respect to the lack of any reasonable basis based on his review of the medical records, but he also contends that

---

[5] To be clear, Exhibit 6 does not contain the records of the encounter at which petitioner was diagnosed with "other complications following immunization."  Rather, it includes encounter records from later visits that include a list of prior diagnoses rendered by Bennett Family Medical Center.  As discussed in the factual history above, this assessment originated at petitioner's September 5, 2017 encounter with PA Marczak wherein he suspected a vaccine-caused neuritis.  (Ex. 20, pp. 73-76.)  Petitioner appears to have first seen TeAnn Phillippis on August 22, 2018.  (*Id.* at 69.)

7

petitioner's references to the Vaccine Injury Table and cited literature are unhelpful. (ECF No. 54.)

## V.  Discussion

As noted above, demonstration of a reasonable basis for the filing of a petition involves examination of the objective evidence available to support the *prima facie* petition requirements under section 11(c) of the Vaccine Act.  *Cottingham*, 971 F.3d at 1345-46.  Thus, petitioner must have presented "more than a mere scintilla of evidence" that she "sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine."  *Id*.  Most analyses of reasonable basis focus on the causation aspect of this requirement; however, section 11(c) of the Vaccine Act also requires that "[a]n off-Table petitioner, who does not benefit from a presumption of causation, must specify [her] vaccine-related injury" in order to "shoulder the burden of proof on causation."  *Broekelschen v. Sec'y of Health & Human Servs*., 618 F.3d 1339, 1346 (Fed. Cir. 2010).  "Although the Vaccine Act does not require absolute precision, it does require the petitioner to establish an injury—the Act specifically creates a claim for compensation for 'vaccine-related injury or death.'"  *Stillwell v. Sec'y of Health & Human Servs.*, 118 Fed. Cl. 47, 56 (2014) (emphasis omitted) (quoting 42 U.S.C. § 300aa-11(c)(1)), *aff'd*, 607 F. App'x. 997 (Fed. Cir. 2015).  Therefore, petitioner must assert "more than just a symptom or manifestation of an unknown injury."  *Broekelschen*, 618 F.3d at 1349.

In this case, however, the petition was never more specific than simply pleading unspecified "Non-Table Injuries."  (ECF No. 1, p. 1.)  Petitioner specified that her vaccination(s) caused "severe pain, including but not limited to severe bilateral shoulder pain and chest pain," but otherwise indicated that the nature and extent of her injuries were set forth in her medical records.  (*Id*. at 1-2.)  Yet, the decision dismissing the case concluded that "petitioner's medical records show that her treating physicians failed to reach a diagnosis or determine the etiology of her symptoms.  Nor did petitioner provide any expert report to otherwise elucidate the nature of her alleged vaccine-related condition."  (ECF No. 62, p. 4.)  Accordingly, this case was dismissed in part for failure to present any cognizable injury under the Vaccine Act.  (*Id*.)

Medical records can evidence the necessary showing for reasonable basis circumstantially.  *James-Cornelius*, 984 F.3d at 1379-80.  However, special masters still look to whether the claim is "feasible" (as opposed to likely to succeed) based on the totality of the circumstances, which includes the factual basis for the claim.  *Woods*, 2012 WL 4010485, at *6-7; *Amankwaa,* 138 Fed. Cl. at 287.  Several decisions by the Court of Federal Claims have explained that "a petitioner has no reasonable basis to bring a claim that is facially devoid – or insurmountably deficient, as the case may be – with respect to an element necessary to establish entitlement."  *Cottingham v. Sec'y of Health & Human Servs.*, 159 Fed. Cl. 328, 334 (2022); *see also Goodgame v. Sec'y of Health & Human Servs.*, 157 Fed. Cl. 62, 68 (2021) ("[A] claim that on its face . . . is not supported by the materials required by the Vaccine Act for a special master to be able to legally award compensation does not have a reasonable basis.").  Thus, it is not the

case that isolated pieces of evidence potentially supportive of petitioner's claim will demonstrate a reasonable basis no matter what the totality of the record indicates.

This distinction is critical in this case. There is no question that shortly after vaccination petitioner began seeking care for chest pain and later other symptoms that she attributed to her vaccination. (Ex. 4, p. 401.) Moreover, her primary care provider recorded a suspicion of a vaccine-related neuritis and her primary care records therefore documented a diagnosis of "other complications following immunization." (Ex. 20, p. 76.) To that end, petitioner also later filed medical literature accompanying the motion for attorneys' fees and costs, which suggested that brachial neuritis can be vaccine caused and can include chest pain. (Exs. 26-27; 29.) The treating physicians' opinion regarding both the nature of petitioner's alleged injury and the potential for vaccine causation is very weak. However, absent evidence to the contrary, if this were the full sum of the relevant evidence, I might have found that petitioner had a reasonable basis for the filing of her petition. But these weak threads of evidence do not add up to "more than a mere scintilla of evidence" of a cognizable injury when viewed within the record as a whole.

Long before petitioner filed her petition, she underwent extensive specialist evaluation for her symptoms. A January 8, 2018 EMG did not show evidence consistent with a neurologic cause of her symptoms. (ECF No. 18, pp. 8-9.) Moreover, her treating neurologist, Dr. Kahn, explicitly confirmed that there is neither a neurologic basis for petitioner's symptoms nor any neurologic relationship between the MMR vaccine and her reported symptoms. (Ex. 24, p. 95.) This subsequent neurologic evaluation renders reliance on the primary care providers' prior suspicion of a vaccine-related neuritis unreasonable, even when coupled with other circumstantial evidence potentially consistent with a peripheral neuropathy. Petitioner's application for attorneys' fees and costs all but states that the later discovery of Dr. Kahn's medical records was fatal to counsel's prosecution of the case. (ECF No. 51, pp. 7-8.) Indeed, petitioner's primary care records further reflect that after specialist evaluation failed to determine a neurologic basis for petitioner's symptoms, the primary care provider began recommending that petitioner seek a psychiatric evaluation to determine if her symptoms were instead psychosomatic, effectively requestioning, if not entirely disclaiming, the prior suspicion of vaccine-caused neuritis. (Ex. 20, pp. 69-72.) This too occurred in 2018, years before the petition was filed. Accordingly, the medical records as a whole show that at the time the petition was filed, petitioner's medical history was entirely lacking of any reliable evidence of a neurologic injury. Without a basis for asserting a neurologic injury, counsel's attempt to bolster the reasonableness of the filing by relying on literature purporting to causally link vaccination to peripheral neuropathies is futile.

Petitioner argues that evaluation of the later specialists' medical records is inappropriate because those medical records were unavailable to petitioner's counsel at the time the petition was filed. (ECF No. 51, p. 13.) However, this is not persuasive. Even if the records were unknown to counsel at the time of filing, they did exist, and they constitute objective evidence bearing on whether the filing of the petition was actually reasonable. This is *not* a circumstance in which reasonable basis dissipated

due to medical encounters occurring post-petition filing.  "[T]he subjective good faith of Petitioner's counsel, in accepting that Petitioner correctly informed [her] of the facts, does not bear on the objective inquiry of whether Petitioner's claim had sufficient reasonable basis to have been brought in the first place.  Counsel still [has] a duty to investigate a Program claim even if they reasonably find their client to be a credible individual." *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *8 (Fed. Cl. Spec. Mstr. Mar. 26, 2014).  The Federal Circuit has specifically confirmed that "counsel's subjective views on the adequacy of the complaint" are beyond the totality of the circumstances that may inform a reasonable basis analysis.  *James-Cornelius*, 984 F.3d at 1379.  Although I am sympathetic to the fact that counsel acted out of an ethical duty to preserve the claim given the statute of limitations, the Federal Circuit in *Simmons* explicitly agreed with the government's argument that "a looming statute of limitations may excuse an attorney's ethical duty to investigate a claim prior to filing a Vaccine Act petition, but that does not create a reasonable basis for the claim in the petition."  875 F.3d at 635-36.

      Here, review of the already-existing specialists' records was a necessary part of any reasonable preliminary investigation.  Thus, the fact that the petition was understandably filed prior to completion of that investigation cannot serve to create a reasonable basis for the filing of the petition where it otherwise did not exist.  Although petitioner's counsel did not have Dr. Kahn's neurology records at the time of filing, she does acknowledge having had petitioner's records from the Pain Center of Arizona – Deer Valley, which were sufficient to alert counsel to the issue.  (ECF No. 51, p. 9.)  Those records include the following passage:

> [Petitioner] states that since these injections she has been experiencing burning pain and numbness in her upper extremities that comes and goes.  She also has chest pain that is intermittent in nature.  Prior to these injections she states she did not have any of the symptoms.  **She has had a full workup and has seen several specialists including cardiology and neurology**.  She has gone [*sic*] several diagnostic testing [which] according to her coming records **have not identified any source of her symptoms**.  Unfortunately, I do not have any of the diagnostic testing records at this time . . . Herr [*sic*] primary care physician has recommended that she see a psychiatrist a[s] **this might be psychosomatic pain**.

(Ex. 5, p. 9 (emphasis added).)

      Petitioner's counsel alternatively suggests that there may have been a reasonable basis to proceed with this case based on Table Injuries of SIRVA or chronic arthritis.  (ECF No. 51, pp. 9-10.)  However, the petition in this case specifies that petitioner is alleging *Non-Table* Injuries.  (ECF No. 1, p. 1.)  Petitioner does not explain how her condition is consistent with chronic arthritis and her medical records do not readily support any suspicion of arthritis as a cause of her symptoms.  Although petitioner's cardiologist vaguely suspected a musculoskeletal etiology may explain petitioner's symptoms, a Table Injury of SIRVA requires that the pain and reduced

range of motion at issue be limited to the shoulder in which the vaccination was administered.  42 C.F.R. 100.3(c)(10).  This petition, however, specifically alleges pain, including but not limited to severe bilateral shoulder pain and chest pain.  (ECF No. 1.)  Accordingly, the allegations of the petition are fundamentally incompatible with the presence of a SIRVA and, therefore, the SIRVA concept does not provide a reasonable basis for the filing of this petition.

### VI.     Conclusion

In light of all of the above, I find that petitioner has not demonstrated that she had a reasonable basis to file this petition.  Petitioner's motion for attorneys' fees and costs is **DENIED** and no award for attorneys' fees and costs is made.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of court is directed to enter judgment herewith.  The Clerk shall transmit this decision to Mr. London.

**IT IS SO ORDERED.**

<u>s/Daniel T. Horner</u>
Daniel T. Horner
Special Master
